The Court took time to consider the case, and at this term,
Rossell, J.
— Said that he was of opinion, tliat the deed from the intestate, James Thatcher, to Susanna M‘Ginnis, ought to have been admitted in evidence on the trial of the cause; this being over-ruled, he was of opinion that a new trial should he had.
Pennington, J.
— It appears from the report of the Chief Justice, tliat on the trial of this cause, satisfactory evidence was given, that James Thatcher, (the father both of Susanna M‘Ginnis, one of the lessors of the plaintiff, in whose right the action was brought, and of Anna M‘Peake, the defendant,) died seized of the premises in question, without leaving any last will and testament. That the said James Thatcher left seven children; one son and six daughters. That the lessors of the plaintiff) claim one-eighth of, the premises in question, in virtue of our statute altering the law directing the descent of real estates. That the defendant, by way of defence, gave in evidence a deed from James Thatcher the father, to Susanna M‘Ginnis, for twenty-seven acres of land. That she possessed the same, and attempted *214 to prove that this land was of equal or superior value to an eight part of the. real estate, of which the said James Thatcher died seized, with a view of contending before the jury, that under the second proviso, in the same section of the act on [*] which the lessors claim title, they had no right to recover, the said Susanna being advanced by her father, in her lifetime, of real estate equal if not superior to the- eighth part which she claimed. The whole of this ^evidence was over-ruled by the Chief Justice, on the ground that the deed from the father to the daughter, did not convey such an estate as could be considered as an advancement under the proviso- in the act. — The whole, therefore, turns upon this point; and to form a correct opinion, it will be necessary to compare'the language of the proviso, with the operative words of the deed. - -
The act, after directing the manner of descent, in cases where an ancestor-dies intestate, leaving two or more sons, Arsons and daughters, has the following proviso: “Provided also,' that if any such ancestor shall, in his life time, have given or advanced any part of his or her real estate to any of his or her issue, such issue shall not be entitled to any part or share of such ancestor’s real estate, descending under or by virtue of this act, unless the real estate so given, or advanced, shall not be equal in value to the. respective shares of the other issue in the same degree of affinity, as the case maybe: and then no more than will-be sufficient to make such share equal in the above proportiori.”-
The. consideration in the deed is expressed in these words: “Now this indenture witnesseth, that the said James Thatcher, for and in consideration of the natural love and affection he hath and beareth to his said daughter Susanna M‘Ginnis, and for the better support of his said daughter Susanna M‘Ginnis, for and during her natural life, &c.” hath given, granted, aliened, &c. unto the said Susanna M'Ginnis, for her support during her natural life, and after her decease to the heirs of her body, and to their heirs and assigns forever, &c. To have and hold, &c. during her natural life, and after her decease, unto the heirs [*] of her body,' and to their heirs and assigns, to the only proper use of the said Susanna M‘Ginnis during her natural life, and to the heirs of her body' and their heirs and assigns forever hereafter. There is also a covenant for quiet enjoyment in the same manner.
The question for our determination is, is this land thus conveyed to Susanna MfGinnis by her father in his lifetime, an advancement to her of any part of his real estate, or rather evidence thereof fit to go to a jury, or is it not? "
*215 I will not now give an opinion (because under the view I have of the subject, it is not necessary) whether an advancement of a mere life estate in land, by a father in his lifetime, to a child, is such an advancement as will bring it within the proviso of the act, or not. But I am of opinion, that an estate in fee-tail is; and also, that the deed under consideration, created in Susanna M‘Ginnis, a fee-tail estate in the lands comprehended in it. The general rule of law as to this is, that when the ancestor by any gift, devise, or conveyance, takes an estate for life, with remainder mediately or immediately to his heirs, in fee, or in tail, the word heirs is a word of limitation, and not of purchase, and the estate of inheritance shall vest in the ancestor, and the express limitation for life is of no effect. That is, that such remainder vests in the ancester himself, and the heir (when he takes) shall take by descent from him, and not as a purchaser. It is not material what gave rise to this rule— whether it sprung from feudal policy — was contrived for the benefit of creditors — or invented to prevent the estate from being in abeyance; still it is a rule of law, so firmly established, that I think nothing short of a Legislative act can shake it. I have looked into the books, and cannot find a case from Shelly’s, adjudged the 23 Eliz. 1 Coke Rep. 104, down to the present time, but that a conveyance, wmrded like the one under consideration, hath been adjudged to be an estate-tail. The deed from Thatcher to Mrs. M‘Ginn is, is to her during her natural life; and then to whom ? [*] Why unto the heirs of her body; that is to the whole succession of heirs descending from her body. The words heirs of her body, are nomen collectivism, and include all her heirs descending from her, and ex vi termini, take in the whole generation. The word heirs is stronger, than the word issue. The subsequent wmrds, and to their heirs and assigns, are either merged in the preceding words, limiting the estate to the heirs of her body, or are too uncertain to control them. There are cases of devises, where the testator hath super-added fresh limitations, and grafted other words of inheritance upon the heir to wiiom he gives the estate; whereby it evidently appeared, that these heirs were meant by the testator, to be the root of a new inheritance, and not considered as branches derived from their own ancestor. But I do not consider the present case as coming within any of them. Archer’s case, 1 Coke 66, is of this kind. Francis Archer devised fee-simple lands, to Robert Archer for life, and afterwards to the next heir male of Robert, and to the heirs males of the body of such next heir male. It was here evidently the intention of the testator, to make the next *216 heir male of Robert the stock, or root of a new inheritance, and not.Robert, himself. In this case it was adjudged, that Robert had- but an estate for life; and the reason given by the judges for this opinion was, because “the remainder is limited to the next heir male of-Robert in the singular number.” It was almost the same as saying, the eldest-son of Robert; it was, in fact, a description’of the person who was to take on the death of Robert,.and not in general terms given" to -a line or succession of heirs, as in the present case; it is evident that Mr. Thatcher intended his daughter Susanna, the stock or root of inheritance from whence, the estate was to descend. ■
The case of Lisle v. Pullin and others, 2 Strange 729, is stronger than this. Nicholas Lisle, devised a messuage and tenement,-to his kinsman, Nicholas Lisle, for and during his natural life, and after his decease [*] unto the heirs males of the body of the said Nicholas, lawfully to be begotten,, and his heirs forever; and in case be died without such heir male, he gave it over .to another kinsman. This was adjudged by ail the Court to be an estate-tail. Raymond, Ch. Justice said, that the word heirs, was always a word of limitation; that, the word heir and heir male include all the heirs of the devisee; that in Archer’s case, it was the word next, which confined it to one particular.person; .for without that word, it would have been a limitation, and not a purchase. Fortescue, J. said the word heirs is certainly a word of "limitation, unless there be other words next eldest, &c., .and that without such words added to it, it can never be a word of purchase. That in Archer’s case, the particular person was pointed out by the word next; and in Wiki’s case, there is the word children, which could not be a word of limitation. In the famous case of Perrin and another v. Blake, the principle laid down in Shelley’s case was not denied; but it was attempted to shew, that in case a testator manifestly intended, from the whole of the will taken together, that the heir- of the body should take as a purchaser, and not by descent, that the Court should so adjudge; and it was contended,- that such intent manifestly appeared, from the will which created the estate in controversy. It is to be. recollected that the case under consideration grows .out of a deed, and not á will. And also, that no such intent can be drawn from the words of the instrument.
. If then, I am correct in this construction, the only question for consideration yet remaining is, how far an estate-tail is to be considered as an advancement of a child, under •the proviso of the first section of the act, altering the law directing the descent of real estates. The proviso speaks *217 only of the ancestor, giving or advancing any part of liis real estate; nothing is said about a fee simple, nor a fee-tail, but only a real estate. In this case, the ancestor gives to his daughter twenty seven acres of land, which exceeded in value what would [*] fall to her share under the act, constituted her the stock of an inheritance, and limiting the estate to the heirs of her body generally, assigning as the consideration moving him to it, the natural love and affection he hath and beareth to his daughter, and for the better support of his said daughter, for and during her natural life. This certainly appears to me, an advancement of his daughter of a real estate, and considering that she wras a married woman, it was not injudiciously disposed of, to benefit herself and her posterity.
The English practice of putting the land advanced by a man in frank-marriage into hotch-pot, as it is called, bears a strong resemblance to this provision of our statute; and so far as it respects the question of advancement, affords some light; the estate of frank-marriage is an estate of inheritance in special tail, 1 Institute 21; Littleton, in section 269, saith, “when a man giveth lands or tenements in frank-marriage, with his daughter or with his other cousin, it is intended by the law that such gift, made by this word frank-marriage, is an advancement and for advancement of his daughter or of his cousin.” And in the same section he further saith — “and for this cause the law' is that she shall have nothing of the other lands or tenements descended to the other parcener, &c. unless she will put the lands given in frank-marriage in hotch-pot, as is said; and if she will not put the lands given in frank-marriage in hotch-pot, then she shall have nothing of the remnant, because it shall be intended by the law, that she is sufficiently advanced, to which advancement she agreeth and holds herself content.” Tiiis idea of Littleton, of an advancement of a father to his daughter of an estate-tail, appears to me, conclusive on this head.
I am, for the foregoing reasons, of opinion, that the land conveyed to Susanna McGinnis, by her father James Thatcher, by the deed offered in evidence on the trial of this cause, was an advancement to her in the life time of her father, of part of his real estate; and [*] therefore, ought to have been received in evidence, and not over-ruled. That the verdict ought to be set aside, and a new trial had, in order to let in the evidence rejected and over-ruled.
Kirkpatrick, C. J.
— This being the opinion of the Court, let the verdict be set aside, and a new trial had.